1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

EASTERN DISTRICT OF CALIFORNIA

8
9

SAM DRAKE,

10                    Plaintiff,

11         v.

12   STEPHANIE CLENDIN, et al.,

13                    Defendants.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. 1:22-cv-01165-EPG (PC)

FINDINGS AND RECOMMENDATIONS,
RECOMMENDING THAT THIS ACTION
PROCEED ON PLAINTIFF'S CLAIMS
AGAINST DEFENDANTS CLENDENIN
AND KISHAN THAT THEY SUBJECTED
PLAINTIFF TO PUNISHMENT IN
VIOLATION OF THE DUE PROCESS
CLAUSE (CLAIM 1 AND CLAIM 2);
PLAINTIFF'S CLAIM AGAINST
DEFENDANT CLENDENIN THAT SHE
FAILED TO PROVIDE PLAINTIFF WITH
RESTORATIVE MENTAL HEALTH
TREATMENT IN VIOLATION OF THE
FOURTEENTH AMENDMENT (CLAIM 3);
AND PLAINTIFF'S CLAIM AGAINST
DEFENDANTS CLENDENIN AND
KISHAN THAT CALIFORNIA WELFARE
AND INSTITUTIONS CODE SECTION
7301 IS AN UNCONSTITUTIONAL BILL
OF ATTAINDER (CLAIM 4); AND THAT
ALL OTHER CLAIMS AND
DEFENDANTS BE DISMISSED

(ECF No. 11)

OBJECTIONS, IF ANY, DUE WITHIN
TWENTY-ONE DAYS

ORDER DIRECTING CLERK TO ASSIGN
DISTRICT JUDGE

1

Sam Drake ("Plaintiff") is a detainee[1] proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint commencing this action on September 13, 2022.  (ECF No. 1).  Plaintiff filed a First Amended complaint on January 27, 2023.  (ECF No. 8).  Plaintiff filed a Second Amended Complaint on April 28, 2023.  (ECF No. 9).

On May 22, 2023, the Court screened Plaintiff's Second Amended Complaint.  (ECF No. 10).  The Court gave Plaintiff thirty days to either: "a. File a Third Amended Complaint; b. Notify the Court in writing that he does not want to file an amended complaint and instead wants to proceed only on his claims against defendants Clendenin and Kishan that they subjected him to punishment in violation of the Due Process Clause (claim 1 and claim 2) and Plaintiff's claim against defendant Clendenin that she failed to provide Plaintiff with restorative mental health treatment in violation of the Fourteenth Amendment (claim 3); or c. Notify the Court in writing that he wants to stand on his complaint."  (Id. at 17).  On June 14, 2023, Plaintiff filed a Third Amended Complaint (ECF No. 11), which is now before this Court for screening.

The Court has reviewed the Third Amended Complaint.  Plaintiff alleges that he was transferred to prison, and thus subjected to punishment, in violation of the Due Process Clause. Plaintiff also alleges that, due to defendant Clendenin's actions (or inactions), Plaintiff was held in prison for months without receiving restorative treatment.  Finally, Plaintiff alleges that California Welfare and Institutions Code Section 7301 is vague, overbroad, and a bill of attainder.

For the reasons described below, the Court will recommend that this action proceed on Plaintiff's claims against defendants Clendenin and Kishan that they subjected Plaintiff to punishment in violation of the Due Process Clause (claim 1 and claim 2); Plaintiff's claim against defendant Clendenin that she failed to provide Plaintiff with restorative mental health

---

[1] It is not clear if Plaintiff was a civil detainee or a pretrial detainee at the time he filed this case, and his status may have changed throughout the relevant period.  In this screening order, the Court is not making a definitive determination regarding Plaintiff's status at any particular time, and neither party is prevented from challenging this status at a later stage in the proceedings.

treatment in violation of the Fourteenth Amendment (claim 3); and Plaintiff's claim against defendants Clendenin and Kishan that California Welfare and Institutions Code Section 7301 is an unconstitutional bill of attainder (claim 4).  The Court will also recommend that all other claims be dismissed.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.    SCREENING REQUIREMENT

As Plaintiff is proceeding *in forma pauperis* (ECF No. 4), the Court screens the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

\\\

\\\

3

## II.     SUMMARY OF PLAINTIFF'S THIRD AMENDED COMPLAINT

Plaintiff sues defendant Stephanie Clendenin, the director of Department of State Hospitals, and S. Kishan, the Chief Psychiatrist at Department of State Hospitals.  Plaintiff brings three claims.

Plaintiff alleges as follows in his complaint:

### A.   Claim 1

In claim 1, Plaintiff alleges that California Welfare and Institutions Code Section 7301 ("WIC Section 7301") violates his Fourteenth Amendment due process right to not be subjected to conditions amounting to punishment.[2]

Plaintiff has a constitutional right to be free from conditions of detainment amounting to punishment.

Defendants Clendenin and Kishan, acting pursuant to WIC Section 7301, each caused

---

[2] WIC Section 7301 states:

Whenever, in the opinion of the Director of State Hospitals and with the approval of the Secretary of the Department of Corrections and Rehabilitation, any person who has been committed to a state hospital pursuant to provisions of the Penal Code or who has been placed in a state hospital temporarily for observation pursuant to, or who has been committed to a state hospital pursuant to Article 1 (commencing with Section 6300) of Chapter 2 of Part 2 of Division 6 of this code needs care and treatment under conditions of custodial security which can be better provided within the Department of Corrections and Rehabilitation, the person may be transferred for those purposes from an institution under the jurisdiction of the State Department of State Hospitals to an institution under the jurisdiction of the Department of Corrections and Rehabilitation.

Persons so transferred shall not be subject to the provisions of Section 4500, 4501, 4501.5, 4502, 4530, or 4531 of the Penal Code.  However, they shall be subject to the general rules of the Secretary of the Department of Corrections and Rehabilitation and of the facility where they are confined and any correctional employee dealing with those persons during the course of an escape or attempted escape, a fight or a riot, shall have the same rights, privileges and immunities as if the person transferred had been committed to the Secretary of the Department of Corrections and Rehabilitation.

Whenever a person is transferred to an institution under the jurisdiction of the Department of Corrections and Rehabilitation pursuant to this section, any report, opinion, or certificate required or authorized to be filed with the court which committed the person to a state hospital, or ordered the person placed therein, shall be prepared and filed with the court by the head of the institution in which the person is actually confined or by the designee of the head of the institution.

Cal. Welf. & Inst. Code § 7301.

Plaintiff to be deprived of his right not to be punished from January 5, 2022, through September 16, 2022.  And the violation is ongoing.

WIC Section 7301 was the moving force behind the violation.  As applied to Plaintiff, WIC Section 7301 is a repudiation of Plaintiff's right not to be punished.  This section in effect authorizes involuntary disciplinary transfers of Plaintiff/civil committees from a State Hospital to prison.  It is punitive in nature.  It does not provide for any administrative or judicial hearing prior to imprisoning "PC/civil committee(s)," and defendant Clendenin did not establish any provision for such within Title 9 or Department of State Hospital Administrative Directives.

The lack of a hearing is a condition that is more restrictive than state prisoners are subjected to.  All state prisoners are afforded administrative and judicial hearings prior to their placement into Department of State Hospitals ("DSH") facilities.

On January 5, 2022, defendant Clendenin pressed a criminal charge against Plaintiff for an injury a 250-pound bully sustained when he attacked Plaintiff from behind.

From March 4, 2021, through December 30, 2021 (the date of the self-defense incident), Plaintiff had zero altercations with other patients and no history of attacking people while at DSH.

Plaintiff had no history of taking antipsychotic medications, either voluntarily or involuntarily, from 1994-2022.

Plaintiff had only been placed into seclusion and restraints once, shortly after his arrival to DSH, where his prison-induced PTSD had been triggered by male staff attempting grab onto him aggressively and force him into a housing situation Plaintiff perceived as unsafe.  Plaintiff invoked his Penal Code section 692 and 693 right to resist harm.

On January 21, 2022, defendant Clendenin had Plaintiff arrested and transferred to Fresno County Jail.  On July 14, 2022, Fresno County Superior Court committed Plaintiff to DSH as incompetent to stand trial ("IST") for competency training.  Plaintiff waited at Fresno County Jail for defendant Clendenin to pick him up.

On September 16, 2022, defendant Clendenin had Plaintiff transferred directly from Fresno County Jail to a California Department of Corrections and Rehabilitation ("CDCR")

prison under WIC Section 7301.  She deemed Plaintiff ineligible for DSH placement and required Plaintiff to undergo intense behavior modification programing.

Defendants Clendenin and Kishan deemed Plaintiff guilty of a crime (assault with a deadly weapon), and imposed seven punitive sanctions on him: imprisonment for one-two years; banishment from DSH for twelve months or longer; mandatory behavior modification programming for twelve months uninterrupted (as DSH return criteria); mandatory open population housing (as return timeframe accrual criteria); mandatory zero contraband disciplinaries; mandatory zero assault disciplinaries (twelve months); and mandatory zero threat-to-assault disciplinaries (six months).

Defendants' punitive disciplinary actions taken against Plaintiff during January through September of 2022 were objectively unreasonable.

Defendants knew Plaintiff would not be able to meet the return criteria and so would remain confined in prison for the full duration of the two-year IST commitment term.

Defendant Clendenin had sole authority and discretion to transfer any and all committees between 2021-2022.

Defendant Clendenin abused her transfer discretion January 5, 2022, through September 16, 2022 (ongoing), in transferring Plaintiff to prison and declaring Plaintiff ineligible for DSH placement.

Defendant Clendenin's decision to imprison Plaintiff by interagency transfer agreement was arbitrary, capricious, and in conflict with all laws prohibiting punishment of civil/pretrial detainees.  So too were her decisions to exile Plaintiff and mandate behavior modification.

Defendant Clendenin's opinion that Plaintiff needed behavior modification treatment/programming within a prison setting had the force and effect of an order and did not further any legitimate non-punitive goal.

Defendants both opined that Plaintiff needed behavior modification programming within a CDCR prison setting and was ineligible for DSH placement from January through September of 2022.  Their opinions were excessive in relation to any non-punitive goal(s).

Defendants Clendenin and Kishan both made claims that the imprisonment and exile of

6

Plaintiff was necessary to protect DSH staff and patients.  For example, Defendant(s) claimed that Plaintiff's assaultive behavior exceeded DSH security capabilities.  Their claims had no factual basis and were only a pretext for punishing Plaintiff.

WIC Section 7301 destroys Plaintiff's liberty interest in freedom from incarceration by operation of law.

Defendant Kishan acted to secure Plaintiff's punishment.  Defendant Kishan made up a claim that Plaintiff lay in wait to assault the bully.

CDCR transferred Plaintiff back to Fresno County Jail on October 19, 2022.

Defendant Clendenin intends to re-transfer Plaintiff back to prison if and when Plaintiff is recommitted to DSH jurisdiction.

Plaintiff remains subject to additional punitive involuntary disciplinary transfers to prison under WIC Section 7301 by defendant Clendenin any time he is returned/recommitted to DSH absent a declaratory judgment declaring the statute unconstitutional.

Plaintiff suffered exacerbated PTSD, humiliation, the stigma of dangerousness, fear for his life, and loss of dignity when Defendants removed his right to defend himself against physical violent attack, removed his right to not be punished, transferred him to prison and banned him from all State Hospitals, and mandated he undergo behavior modification programing under WIC Section 7301.

From January 5, 2022, through September 16, 2022 (ongoing), Defendants acted with conscious indifference to the risk of Plaintiff suffering mental trauma from being punished for his acting in self-defense.

### B.  Claim 2

In claim 2, Plaintiff alleges that he, a civil committee/incapacitated pretrial detainee, was subjected to an involuntary disciplinary transfer from DSH to CDCR without notice or a hearing, in violation of his Fourteenth Amendment procedural due process rights.

Plaintiff alleges his involuntary transfer implicates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.  Plaintiff had a right to adequate notice and an opportunity for a hearing prior to his involuntary transfer.

7

On January 5, 2022, defendant Clendenin directed defendant Kishan to submit a referral memorandum requesting the transfer of Plaintiff to CDCR custody pursuant to WIC Section 7301, and he did so on January 7, 2022.

Defendants did not give verbal or written notice to Plaintiff that he was being considered for transfer before, during, or after the transfer.

On July 26, 2022, defendant Clendenin received the July 14, 2022 Fresno County Superior Court DSH Commitment Packet ordering Plaintiff's placement into a State Hospital under her jurisdiction.

On July 29, 2022, defendant Clendenin referred Plaintiff's case to CDCR via email for approval of Plaintiff's placement into the custody of CDCR pursuant to WIC Section 7301's "Enhanced Security Needs" protocol.  Plaintiff remained completely unaware of these transfer arrangements.

Plaintiff's only awareness of a pending transfer was from a search warrant document he had been given by the state police on January 18, 2022, three days prior to his surprise arrest, which indicated he was pending transfer to Atascadero State Hospital.  Plaintiff had no idea that a transfer to prison was legally possible, let alone being secretly arranged by Defendants.

Defendants did not give Plaintiff notice and a hearing prior to transferring him to prison, banning him from State Hospital admission, and mandating that he undergo behavior modification programming.  Had Defendants given Plaintiff notice and a hearing, Plaintiff would have presented ample evidence to prove he poses no heightened security risk, and he would not have been transferred to prison.

Plaintiff's first and only notice that he was being transferred to prison came from Fresno County Jail Transportation Sheriff's Deputies on the day of the transfer, September 16, 2022. The deputies told Plaintiff that his State Hospital commitment remand order had been changed because DSH did not want him.  The news shocked Plaintiff's conscience into disbelief, confusion, outrage, and despair since his court documents indicated remand to DSH and he knew nothing about being sent to prison to serve his civil commitment.

CDCR issued a "DRB W&IC § 7301 Review" decision to Defendants on August 18,

8

2022, wherein it approved their January 7 and July 29 requests to take custody of Plaintiff and provide behavior modification "maximum security" disciplinary restrictions (programming) under the harshest punitive conditions, including being handcuffed at all times and multiple deprivations.

CDCR gave Plaintiff a copy of the Review on September 20, 2022, which is when Plaintiff became aware of the transfer arrangements.

Plaintiff suffered increased emotional distress, mental shock, and oppression when Defendants did not give him notice and a hearing 255 times between January 5, 2022, through September 16, 2022. Each day of Defendants' misconduct constituted a new and separate violation in the continuous series of violations of Plaintiff's due process rights.

Defendants' repeated refusals to give Plaintiff notice and a hearing warrant punitive damages.

The disciplinary sanctions imposed on Plaintiff were unjustified and disproportionate to the actual incident where Plaintiff was forced to defend himself against a massive bully-attacker. Less harsh sanctions were available.

C. <u>Claim 3</u>

In claim 3, Plaintiff alleges that defendant Clendenin failed to timely provide restorative mental health services in the least restrictive setting, and altogether, in violation of the Fourteenth Amendment.

Plaintiff had a constitutional right to receive restorative mental health treatment at all times from April 6, 2022, through September of 2022 (ongoing). Defendant Clendenin deprived Plaintiff of this right from April 16, 2022, through September 16, 2022 (ongoing).

Defendant Clendenin deprived Plaintiff of his right to receive timely placement, evaluation, admission, and substantive mental health services for more than 115 days (ongoing).

Approximately January 5, 2022, through January 18, 2022, defendant Clendenin approved and scheduled Plaintiff to be transferred to Atascadero State Hospital. She later told the public defender (approximately May through July of 2022) that Plaintiff would be

1  transferred to Metropolitan State Hospital.  However, these transfer plans were a ruse.
2  Defendant Clendenin intended to send Plaintiff to prison.

3        Defendant Clendenin had a legal duty to evaluate Plaintiff's placement within fifteen
4  court days and to admit Plaintiff into a civil (non-penal) State Hospital within sixty days,
5  beginning April 6, 2022.

6        On April 6, 2022, Fresno County Superior Court ordered defendant Clendenin's
7  designee, the Community Program Director ("CPD"), to provide the Court its IST evaluation
8  and placement recommendation for Plaintiff's competency restoration treatment within ten
9  court days.

10        The CPD sought direction from defendant Clendenin.  Defendant Clendenin directed
11  the CPD to recommend DSH for Plaintiff's IST placement, and the CPD did so on June 26,
12  2022 (72 days late).  Defendant Clendenin did not disclose to the Court that she deemed
13  Plaintiff ineligible for State Hospital placement on the ground of dangerousness (an ineligibility
14  disclosure on the ground of dangerousness would have triggered an opportunity for Plaintiff to
15  rebut the claim and stop Defendants' plan to imprison and ban Plaintiff under WIC Section
16  7301).  Defendant Clendenin orchestrated commitment solely to transfer Plaintiff to prison and
17  ban him from DSH on that ground.

18        Defendant Clendenin breached her legal duty owed to Plaintiff April 6, 2022, through
19  June 26, 2022, and again on July 26, 2022, through September of 2022.  This is ongoing.

20        On July 14, 2022, Fresno County Superior Court ordered defendant Clendenin to place
21  Plaintiff into a State Hospital and provide him with competency restoration treatment under
22  Penal Code § 1370.  This was a civil commitment order.

23        On July 26, 2022, defendant Clendenin received the Court's commitment packet via
24  email.  However, defendant Clendenin did not admit Plaintiff into any State Hospital.  She also
25  failed to provide Plaintiff with any, and Plaintiff did not receive any, competency restoration
26  treatment.

27        Defendant Clendenin had access to Plaintiff's mental health records at all relevant
28  times.

Defendant Clendenin repeatedly made the decision to not provide Plaintiff with the mental health services he needed in a non-penal hospital setting from August 6, 2022, through September of 2022 (ongoing).

Defendant Clendenin knew or reasonably should have known that not providing mental health services in a hospital setting to Plaintiff, an IST detainee, posed a substantial risk that Plaintiff's PTSD would worsen.

Plaintiff has been in perpetual jail/prison confinement since 1992 without parole release.

Plaintiff suffered confinement-induced insanity and exacerbated PTSD when defendant Clendenin did not provide him with substantiative inpatient mental health services.

Plaintiff is not dangerous to himself or others when in a hospital setting or in free society.

Defendant Clendenin caused Plaintiff's injures when she prolonged his time in jail and denied him a fair outpatient evaluation.  No interview of Plaintiff was conducted.

Defendant Clendenin's conduct warrants punitive damages.

D. <u>Claim 4</u>

In claim 4, Plaintiff alleges that WIC Section 7301 violates the Constitution's prohibition of bills of attainder.

Plaintiff has a fundamental right not to be subject to the passage/enforcement of any law that permits government officials to "attain," imprison, or banish him absent a judicial trial.

Defendants deprived Plaintiff of his right to not be subjected to any bill of attainder.

WIC Section 7301 is civil in form but penal in effect.  It was enacted in 1967, and was last amended June 27, 2012.  It governs the transfer of mental asylum patients from civil hospital institutions to penal prison institutions.

At all times relevant, WIC Section 7301 authorized the transfer of Plaintiff/civil committees from a State Hospital to a prison without a judicial trial.

WIC Section 7301 does not contain a stated non-punitive purpose and does not further any non-punitive legislative purpose.  It is punitive in effect, and destroys Plaintiff's liberty

interest in freedom from restraint/incarceration.  WIC Section 7301 changed Plaintiff's legal rights from civil to penal in 2022.  It gave Defendants indirect judicial power to punish Plaintiff, so long as they concealed their intent to punish.

WIC Section 7301 specifically targeted Plaintiff/civil committees to be presumed guilty and punished without a judicial trial.

WIC Section 7301 falls within the historical meaning of legislative punishment because it includes imprisonment and banishment.

WIC Section 7301 indirectly determines guilt by authorizing DSH heads to assume guilt based on no more than unproven accusations.

The California State Legislature expressly intended to punish Plaintiff/civil committees by its omission of a provision for a judicial trial in WIC Section 7301.

WIC Section 7301 did not afford Plaintiff the protections of a judicial trial prior to his being assumed guilty, imprisoned, and banished in 2022 on non-adjudicated allegations of misconduct.

E. <u>Claim 5</u>

In claim 5, Plaintiff alleges that WIC Section 7301 is facially unconstitutional because its language does not provide fair warning, in violation of Plaintiff's Fourteenth Amendment due process rights.

Plaintiff has a fundamental right to be provided fair warning in the language of laws. Plaintiff was deprived of this right by defendant Clendenin's "absent" policy.

WIC Section 7301 is unconstitutionally vague on its face.  It contains no language to safeguard against erroneous/arbitrary imprisonment of Plaintiff/civil committees.  Additionally, it contains no definition of its terms.

WIC Section 7301's language: "Whenever in the opinion of the DSH director and with the approval of the CDCR Secretary" is deficiently vague in that it does not inform mental health patients/Plaintiff that this constitutes a secret and non-reviewable interagency agreement that can drastically change one's conditions of inpatient treatment at any time and without notice.

12

WIC Section 7301's language: "Needs care & treatment under conditions of custodial security which can be better provided within CDCR [prison system]," (ECF No. 11, p. 22) (alteration in original), is vague in that it does not give mental patients/Plaintiff fair warning of what conduct would warrant a disciplinary transfer to prison.  Additionally, this language is overly broad in that it allows any number of unknown punitive treatments, for example, behavior modification programming, banishment, etc.…  It is also vague in that it does not inform mental patients/Plaintiff that they would be handcuffed and locked down at all times.

CDCR is incapable of and not responsible for providing mental healthcare treatment to civil committees/Plaintiff.

WIC Section 7301 fails to define the terms of its application, and defendant Clendenin did not establish policies or regulations to carry out its terms.

WIC Section 7301's language: "Persons so transferred shall be subject to the general rules of the CDCR Secretary" is vague in that it does not inform mental patients/Plaintiff that his legal rights would be changed from civil to penal.

WIC Section 7301 allows for arbitrary enforcement.

WIC Section 7301 is unconstitutionally overbroad and arbitrary, and Defendants knew this in 2021-2022.

WIC Section 7301 is arbitrary in that its absent provision for notice and a judicial hearing prior to transfer conflicts with governing decisional and statutory laws.

WIC Section 7301's language: "Needs care and treatment under conditions of custodial security which can be better provided within CDCR…  The person [patient] may be transferred 'for those purposes' from [DSH] to [CDCR]," (ECF No. 11, p. 24) (alterations in original), is arbitrary in that it conflicts with governing decisional law that prohibits restraining/punishing detainees.

Plaintiff suffered oppression, the stigma of dangerousness, punitive treatment, loss of dignity, and removal of rights when defendant Clendenin failed to provide him fair warning in the language of a policy or regulation purporting to carry out WIC Section 7301.

\\\

### III.      ANALYSIS OF PLAINTIFF'S THIRD AMENDED COMPLAINT

A. <u>Section 1983</u>

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)); <u>see also</u> <u>Chapman v. Houston Welfare Rights Org.</u>, 441 U.S. 600, 618 (1979); <u>Hall v. City of Los Angeles</u>, 697 F.3d 1059, 1068 (9th Cir. 2012); <u>Crowley v. Nevada</u>, 678 F.3d 730, 734 (9th Cir. 2012); <u>Anderson v. Warner</u>, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006); <u>see also</u> <u>Marsh v. County of San Diego</u>, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  <u>Preschooler II v. Clark County Sch. Bd. of Trs.</u>, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  <u>Preschooler II</u>, 479 F.3d at 1183 (quoting <u>Johnson</u>, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  <u>Arnold v. Int'l Bus. Mach. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981); <u>see also</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged.  Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others."  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B.   Due Process and Punishment of Civil/Pretrial Detainees (Claims 1 & 2)

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at

stake.  Ingraham v. Wright, 430 U.S. 651, 672-73 (1977).

"[A]n individual detained under civil process—like an individual accused but not convicted of a crime—cannot be subjected to conditions that amount to punishment.  Following *Bell*, we have recognized that punitive conditions may be shown (1) where the challenged restrictions are expressly intended to punish, or (2) where the challenged restrictions serve an alternative, non-punitive purpose but are nonetheless excessive in relation to the alternative purpose, or are employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.  Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (citations and internal quotation marks omitted).  "[W]hen a [Sexually Violent Predator Act] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'" Id.

In claim 1, Plaintiff alleges that California Welfare and Institutions Code Section 7301 ("WIC Section 7301") violates his Fourteenth Amendment due process rights to not be detained and punished without a trial.

In claim 2, Plaintiff alleges that he, a civil committee/incapacitated pretrial detainee was subjected to an involuntary disciplinary transfer from DSH to CDCR without notice or a hearing, in violation of his Fourteenth Amendment procedural due process rights.

Plaintiff alleges that on January 5, 2022, defendant Clendenin directed defendant Kishan to submit a referral memorandum requesting the transfer of Plaintiff to CDCR custody pursuant to WIC Section 7301, and he did so on January 7, 2022.  On July 29, 2022, defendant Clendenin referred Plaintiff's case to CDCR via email for approval of Plaintiff's placement into the custody of the CDCR pursuant to WIC Section 7301's "Enhanced Security Needs" protocol.

On September 16, 2022, defendant Clendenin had Plaintiff transferred directly from Fresno County Jail to a CDCR prison under WIC Section 7301, despite the fact that on July 14, 2022, Fresno County Superior Court issued a civil commitment order pursuant to Penal Code §

1370 directing defendant Clendenin to place Plaintiff into a State Hospital.

Defendants did not provide Plaintiff with notice or an opportunity to be heard prior to being transferred from a State Hospital to prison.  Plaintiff was subjected to maximum security disciplinary restrictions, including being handcuffed at all times.

Liberally construing the allegations in Plaintiff's complaint, the Court finds that claim 1 and claim 2 should proceed past screening.  While the Court finds that the claims should proceed past screening, the Court is not taking a position whether WIC Section 7301 is unconstitutional, whether Plaintiff was a civil detainee or a pretrial detainee at any particular point in time, what process (if any) Plaintiff was entitled to prior to being transferred, or whether Plaintiff was subjected to punishment.

C.  Due Process and Incapacitated Criminal Defendants (Claim 3)

"Incapacitated criminal defendants have liberty interests in freedom from incarceration and in restorative treatment." Oregon Advoc. Ctr. v. Mink, 322 F.3d 1101, 1121 (9th Cir. 2003).  "Holding incapacitated criminal defendants in jail for weeks or months violates their due process rights because the nature and duration of their incarceration bear no reasonable relation to the evaluative and restorative purposes for which courts commit those individuals." Id. at 1122.

Plaintiff alleges that on April 6, 2022, Fresno County Superior Court ordered defendant Clendenin's designee, the Community Program Director ("CPD"), to provide the Court its IST evaluation and placement recommendation for Plaintiff's competency restoration treatment within ten court days.  The CPD sought direction from defendant Clendenin.  Defendant Clendenin directed the CPD to recommend DSH for Plaintiff's IST treatment, and the CPD did so on June 26, 2022 (72 days late).  On July 14, 2022, Fresno County Superior Court ordered defendant Clendenin to place Plaintiff into its state hospital and provide him with competency restoration treatment under Penal Code § 1370.  This was a civil commitment order.  On July 26, 2022, defendant Clendenin received the Court's commitment packet via email.  However, defendant Clendenin did not admit Plaintiff into any State Hospital.  She also failed to provide Plaintiff with any, and Plaintiff is not receiving any, competency restoration treatment.

17

Liberally construing the allegations in the complaint, the Court finds that Plaintiff sufficiently alleges that defendant Clendenin was aware of Plaintiff's situation, and that due to defendant Clendenin's actions (or inactions), Plaintiff was held in prison for months instead of receiving restorative treatment.  Accordingly, the Court finds that Plaintiff's Fourteenth Amendment due process claim against defendant Clendenin should proceed past screening.  See, e.g., Stiavetti v. Clendenin, 65 Cal. App. 5th 691, 695 (2021) (finding that failure "to commence substantive services designed to return [IST] defendants to competency within 28 days of service of the transfer of responsibility document" violates the due process rights of IST defendants).

The Court also finds that Plaintiff fails to state a claim against defendant Kishan in claim 3.  As discussed above, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  However, there are no allegations in claim 3 regarding defendant Kishan's conduct.

### D.  Bills of Attainder (Claim 4)

"Article I, Section 10, Clause 1 of the United States Constitution provides that, "[n]o State shall.... pass any Bill of Attainder."  Fowler Packing Co., Inc. v. Lanier, 844 F.3d 809, 816 (9th Cir. 2016) (alterations in original).[3]  "A bill of attainder is a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial."  Id. at 816-17 (citation and internal quotation marks omitted).  "The Supreme Court has identified three elements of a bill of attainder claim: '[1] specification of the affected persons, [2] punishment, and [3] lack of a judicial trial.'"  Id. at 817 (quoting Selective Serv. Sys. v. Minn. Pub. Interest Research Grp., 468 U.S. 841, 847 (1984).

Plaintiff alleges that WIC Section 7301 targets "civil committees" like Plaintiff, and allows them to be sent to prison from a civil hospital institution without a trial.

Liberally construing the allegations in Plaintiff's complaint, the Court finds that claim 4

---

[3] "The United States Constitution contains two sections prohibiting the passage of a bill of attainder, one aimed at the federal government (Article I, Section 9, Clause 3) and one aimed at the states (Article I, Section 10, Clause 1).  The same analysis applies to both sections."  Franceschi v. Yee, 887 F.3d 927, 941 n.7 (9th Cir. 2018).

1    should proceed past screening.[4]

2                     E.   Vagueness and Overbreadth (Claim 5)

3              "As generally stated, the void-for-vagueness doctrine requires that a penal statute define

4    the criminal offense with sufficient definiteness that ordinary people can understand what

5    conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory

6    enforcement.  Although the doctrine focuses both on actual notice to citizens and arbitrary

7    enforcement, we have recognized recently that the more important aspect of vagueness doctrine

8    is not actual notice, but the other principal element of the doctrine—the requirement that a

9    legislature establish minimal guidelines to govern law enforcement.  Where the legislature fails

10   to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that]

11   allows policemen, prosecutors, and juries to pursue their personal predilections."  Kolender v.

12   Lawson, 461 U.S. 352, 357-58 (1983) (alteration in original) (citations and internal quotation

13   marks omitted).  See also Castro v. Terhune, 712 F.3d 1304, 1307 (9th Cir. 2013) ("Under the

14   void-for-vagueness doctrine, due process requires enactments to be written with sufficient

15   definiteness that ordinary people can understand what conduct is prohibited and in a manner

16   that does not encourage arbitrary and discriminatory enforcement.") (citation and internal

17   quotation marks omitted).

18            "In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to

19   determine whether the enactment reaches a substantial amount of constitutionally protected

20   conduct.  If it does not, then the overbreadth challenge must fail.  The court should then

21   examine the facial vagueness challenge and, assuming the enactment implicates no

22   constitutionally protected conduct, should uphold the challenge only if the enactment is

23   impermissibly vague in all of its applications."  Vill. of Hoffman Ests. v. Flipside, Hoffman

24   Ests., Inc., 455 U.S. 489, 494-95 (1982).  See also United States v. Harris, 705 F.3d 929, 932

25   (9th Cir. 2013) ("'[V]agueness challenges to statutes which do not involve First Amendment

26   _____

27            [4] While the Court finds that this claim should proceed past screening, the Court is not taking a position on
     whether WIC Section 7301 is a bill of attainder.  The Court is also not making a determination regarding
28   Defendants' liability if WIC Section 7301 is a bill of attainder.  Nothing in this order prevents Defendants from
     filing a motion to dismiss on any of Plaintiff's claims.

                                                   19

freedoms must be examined in the light of the facts of the case at hand.'") (alteration in original) (quoting United States v. Mazurie, 419 U.S. 544, 550 (1975)); United States v. Rodriguez, 360 F.3d 949, 953 (9th Cir. 2004) ("Where … a statute is challenged as unconstitutionally vague in a cause of action not involving the First Amendment, we do not consider whether the statute is unconstitutional on its face.  Rather, we must determine whether the statute is impermissibly vague *in the circumstances of this case*.") (citations and internal quotation marks omitted); Kashem v. Barr, 941 F.3d 358, 375 (9th Cir. 2019) ("[V]agueness challenges to statutes that do not involve First Amendment violations must be examined as applied to the defendant.") (alteration in original) (citation and internal quotation marks omitted); Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 971 (9th Cir. 2003) ("To bring a successful facial [vagueness] challenge outside the context of the First Amendment, the challenger must establish that no set of circumstances exists under which the [statute] would be valid.") (alteration in original) (citation and internal quotation marks omitted).

In claim 5, Plaintiff alleges that WIC Section 7301 is facially unconstitutional because its language does not provide fair warning, in violation of Plaintiff's Fourteenth Amendment due process rights.  Plaintiff also complains that WIC Section 7301 is unconstitutionally overbroad.

Plaintiff does not allege that WIC Section 7301 implicates First Amendment freedoms. Additionally, Plaintiff fails to sufficiently allege that WIC Section 7301 reaches a substantial amount of constitutionally protected conduct or that there is no set of circumstances under which this statute would be valid.  Accordingly, Plaintiff's overbreadth and facial vagueness challenges fail, and Plaintiff fails to state a claim in claim 5.

## IV.    CONCLUSION, RECOMMENDATIONS, AND ORDER

The Court has screened the Third Amended Complaint and finds that this action should proceed on the following claims: Plaintiff's claims against defendants Clendenin and Kishan that they subjected Plaintiff to punishment in violation of the Due Process Clause (claim 1 and claim 2); Plaintiff's claim against defendant Clendenin that she failed to provide Plaintiff with

restorative mental health treatment in violation of the Fourteenth Amendment (claim 3); and Plaintiff's claim against defendants Clendenin and Kishan that California Welfare and Institutions Code Section 7301 is an unconstitutional bill of attainder (claim 4).  The Court also finds that all other claims should be dismissed.

The Court will not recommend that further leave to amend be granted.  Plaintiff has already filed four complaints.  Additionally, in the Court's prior screening order, the Court identified deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint.  Plaintiff filed his Third Amended Complaint with the benefit of the Court's screening order.  Thus, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, the Court HEREBY RECOMMENDS that:

1. This case proceed on Plaintiff's claims against defendants Clendenin and Kishan that they subjected Plaintiff to punishment in violation of the Due Process Clause (claim 1 and claim 2); Plaintiff's claim against defendant Clendenin that she failed to provide Plaintiff with restorative mental health treatment in violation of the Fourteenth Amendment (claim 3); and Plaintiff's claim against defendants Clendenin and Kishan that California Welfare and Institutions Code Section 7301 is an unconstitutional bill of attainder (claim 4); and

2. All other claims be dismissed for failure to state a claim.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

\\\

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated:   __**July 13, 2023**__          /s/ _Erica P. Grosjean_

UNITED STATES MAGISTRATE JUDGE